IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02219-NRN

BRISTOL HEAD ELECTRONIC SITE TECHNOLOGIES, L.L.C., a Colorado limited liability company, and
ZERO ERROR NETWORKS, LLC, a Colorado limited liability company,

Plaintiffs,

v.

COMMNET WIRELESS, LLC, a foreign limited liability company,

Defendant.

---

# ORDER ON
# DEFENDANT'S PARTIAL MOTION TO DISMISS (DKT. #28)

---

**N. REID NEUREITER**
**United States Magistrate Judge**

This case is before the Court for all purposes pursuant to 28 U.S.C. § 636(c), upon the consent of the parties (Dkt. #17) and the Order of Reference entered by Chief Judge Philip A. Brimmer on October 8, 2019. Dkt. #19. Now before the Court is Defendant Commnet Wireless, LLC's ("Commnet" or "Defendant") Partial Motion to Dismiss. Dkt. #28. Plaintiffs Bristol Head Electronic Site Technologies, LLC ("BEST") and Zero Error Networks, LLC ("Zero Error") (collectively "Plaintiffs") filed a response (Dkt. #33), and Commnet filed a reply. Dkt. #35. The Court heard argument on the subject motion on January 23, 2020. *See* Dkt. #39. The Court has taken judicial notice of the docket and considered the applicable Federal Rules of Civil Procedure and case law. Now, being fully informed and for the reasons discussed below, it is **ORDERED** that that the subject motion is **GRANTED IN PART** and **DENIED IN PART**.

**BACKGROUND**

In their Second Amended Complaint for Damages and Demand for Jury Trial ("SAC") (Dkt. #27),[1] Plaintiffs assert six claims for relief against Commnet.

**Count I**. BEST owns the Bristol Head Electronic Site (the "Site") located atop Bristol Head Mountain in a remote part of the Rio Grande National Forest. The Site must be powered by an off-the-grid electrical system. Commnet and BEST entered into a lease agreement whereby Commnet, which provides cell phone services, agreed to install, operate, and maintain an electric power system at the Site. In return, Commnet was permitted to co-locate equipment on a cell tower at the Site. BEST alleges that Commnet breached its agreement to provide a reliable electrical power system to the Site, which led to frequent power outages. BEST claims it incurred damages, including "$800 per month rent reduction it agreed to forgo in return for reliable electric power, plus considerable expense for repairing the Commnet power equipment during outages and other incidental and consequential damages plus attorney fees and costs of this action." Dkt. #27 at 4, ¶¶ 12–13.

**Count II.** Zero Error specializes in providing WIFI internet services to retail users and related data link to the world wide web known as a "backhaul." Zero Error likewise has a lease with BEST to use the cell tower at the Site. Zero Error alleges that it was an intended beneficiary of the contract between BEST and Commnet to provide electric power to the Site. Thus, Commnet is liable to Zero Error for its failure to provide an

---

[1] Plaintiffs filed this lawsuit in District Court for Mineral County, Colorado. Dkt. #5. Commnet timely filed a Notice of Removal with the United States District Court for the District of Colorado on August 5, 2019. Dkt. #1. The Court granted Plaintiffs' motion (Dkt. #21) to amend their Complaint on October 22, 2020. Dkt. #22. The SAC was filed on November 21, 2019. Dkt. #27.

adequate power supply. This affected Zero Error's ability to provide satisfactory internet service to its customers and resulted in damage to Zero Error's equipment. *Id.* at 3–4, ¶¶ 16–19.

**Count III.** Zero Error alleges that it had its own agreement with Commnet to provide backhaul carrier services to support Commnet's cell phone services. The agreement's three-year term was to end in September 2019. Zero Error claims that Commnet represented that it would renew the agreement, as well as enter into a new agreement to provide backhaul services for another company. Relying on these representations, Zero Error made efforts to improve its equipment, and entered an agreement with CenturyLink to provide supplemental backhaul services. Commnet then backed out of the agreement, causing Zero Error damages. *Id.* at 4–5, ¶¶ 21–27.

**Count IV.** Zero Error claims that Commnet employees repeatedly damaged or disconnected its equipment at the Site and other locations. *Id.* at 6, ¶¶ 29–30.

**Count V.** Plaintiffs allege that Commnet had a five-year, $500 per month lease agreement with Zero Error at a new tower near Lake City, Colorado. Zero Error, relying on Commnet's agreement to support its application for an expanded permit for the new tower to the Bureau of Land Management ("BLM"), "did considerable work and expended funds to apply for the expanded permit." However, Zero Error claims that Commnet entered in an agreement with a competing company and supported its permit application. This resulted in a "public competitive bid" that Zero Error might eventually lose. Without Commnet allegedly breaking the agreement, there apparently would not have been any public competitive bid. *Id.* at 6–7, ¶¶ 32–34.

3

**Count VI.** Similar to Count V, BEST claims that Commnet undermined its permit application for a new tower on Bristol Head Mountain by supporting a competing bid. *Id.* at 7–8, ¶¶ 36–38.

Commnet now moves to dismiss Counts III–VI under Rule 12(b)(6). *See* Dkt. #28.

## **LEGAL STANDARD**

Rule 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall*, 935 F.2d at 1198. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679–81. Second, the court

considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679.

However, the Court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

## ANALYSIS

**COUNT III**

Commnet argues that Count III fails to state a claim for promissory estoppel. Commnet essentially argues that Zero Error's allegations are not detailed enough: "The [SAC] entirely fails to identify who promised what to whom and when and under what circumstances." Dkt. #28 at 4. Commnet is asking the Court to impose a pleading standard more stringent than that required by Rule 12. The Court declines to do so.

"The Rule 12(b)(6) standard doesn't require a plaintiff to set forth a prima facie case for each element." *Sylvia v. Wisler*, 875 F.3d 1307, 1326 (10th Cir. 2017) (internal

5

quotation marks omitted). Even under *Iqbal/Twombley*, "that standard is still fundamentally one of notice pleading intended to ensure that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate defense." *Id.* A complaint need not provide detailed factual allegations; rather, "it must give just enough factual detail to provide 'fair notice of what the claim is and the grounds upon which it rests.'" *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) (quoting *Twombley*, 550 U.S. at 555).

The Court finds that Count III sufficiently alleges a promissory estoppel claim under Rule 12(b)(6). "Promissory estoppel is an extension of the basic contract principle that one who makes promises must be required to keep them." *Schulz v. City of Longmont*, 465 F.3d 433, 438 n.8 (10th Cir. 2006) (quoting *Patzer v. City of Loveland*, 80 P.3d 908, 912 (Colo. App. 2003)). "Under Colorado law, the elements of promissory estoppel are: (1) a promise, (2) that the promisor should have expected would induce action or forbearance by the promisee, (3) that the promisee did, in fact, reasonably rely on to the promisee's detriment, and (4) that must be enforced to prevent injustice." *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1257 (10th Cir. 2016).

Here, Zero Error alleges that Commnet, "through its authorized employees and agents[,] affirmatively represented to Zero Error" that it would renew its agreement for backhaul service and enter into a new agreement with Zero Error to provide this service for a different company. This satisfies the first element. *See In re Estate of Newton*, 313 P.3d 619, 621 (Colo. App. 2011) ("Because an agent generally represents a principal contractually, he or she may take authorized actions on the principal's behalf that bind the principal."). Commnet's "authorized employees and agents" then "advised and

6

recommended" that Zero Error "improve its equipment and to provide a secondary back haul to several communication sites," which satisfies the second element. Zero Error, relying on the promise to renew the lease and with Commnet's knowledge, did make the suggested improvements and entered into an agreement with a third-party for a supplemental backhaul link. When the lease was not renewed, the expenses Zero Error incurred were all for naught, a result that can reasonably be labelled unjust. Thus, each element has been adequately alleged. The allegations also meet the plausibility requirement specified by *Iqbal/Twombley* because the Court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. Count III will not be dismissed.

**COUNT IV**

Commnet next argues that Count IV, like Count III, "fails to allege a minimum of factual detail." Commnet states that Count IV places it on notice "that someone associated with Defendant damaged the equipment of one or both Plaintiffs, but it does little else." It does not need to do anything else. Zero Error[2] alleges that Commnet's employees and agents repeatedly damaged its equipment at the Site and other locations. At a minimum, this states a claim for negligence: Commnet had a duty to not damage Zero Error's equipment, and it breached that duty when its employees did damage the equipment. *See Laughman v. Girtakovskis*, 2015 COA 143, ¶ 9. ("To prevail on a claim of negligence, the plaintiff must show: (1) that the defendant owed

---

[2] The Court construes Count IV to be asserted only by Zero Error. *See* Dkt. #27 at 6 ("WHEREFORE, Plaintiff ZERO ERROR NETWORKS, LLC, demands judgment against, COMMNET WIRELESS, LLC, for damages, costs of this action, pre and post judgment interest and demands trial by jury.").

him or her a legal duty of care; (2) that the defendant breached that duty; (3) that the plaintiff suffered injury; and (4) the cause of that injury was the defendant's conduct."). The specific details of what the damage entailed can be gathered through the discovery process. If, as Commnet claims in its reply, discovery has unearthed no evidence to support Zero Error's allegations, Commnet can establish the lack of supporting evidence in a summary judgment motion. In addition, if Plaintiffs are unable to present any substantive evidence supporting this claim, they would do well to voluntarily dismiss it. But at this stage, accepting the allegations in the SAC as true, Plaintiffs have sufficiently alleged a claim for relief.

**COUNTS V AND VI**

According to Commnet, Counts V and VI fail to allege either damages or causation. As to causation, Commnet claims that the fact that Plaintiffs' expanded permit applications are subject to a public competitive bid because Commnet supported another company's application is unrelated to any harm suffered by Plaintiffs because the BLM and the United States Forest Service are the entities that will make the final decisions on the applications. Moreover, Commnet claims that any injury is speculative because no decisions on the bids have been made.

In their response, Plaintiffs state that these claims are actually based on an anticipatory breach of contract theory. The contracts in question were apparently oral agreements for Commnet to rent space for five years on the new towers at the two sites and to make certain payments toward the application process and "support" Plaintiff's applications.

Commnet, in reply, points out that an oral contract for a five-year lease violates Colorado's statute of frauds. Commnet also notes that the allegations set forth in the SAC cannot be characterized as setting forth a claim for anticipatory breach of contract, and even if it they could, such a claim would fail because Plaintiffs again cannot establish any causation or damages.

The parties' confusion over what is really being alleged in Counts V and VI was evident at the Motion Hearing. Plaintiffs' counsel did not advance any arguments for why the statute of frauds would not apply to the purported lease agreements. Plaintiffs did not seem to know whether Commnet's alleged commitment to support Plaintiffs' bids was separate from its agreement to lease space on the tower. Also unclear was what that commitment truly entailed. Plaintiffs' position essentially boils down to their belief that Commnet had a duty to back only their bids, and by "supporting" competitors' applications, Commnet is liable for any and all subsequent damages.

As alleged, Counts V and VI fail to state claims for relief. Insofar as Plaintiffs allege that they entered into oral contracts with Commnet to lease space on the new towers, such agreements are void. *See* Colo. Rev. Stat. § 38-10-108 ("Every contract for the leasing for a longer period than one year . . . is void unless the contract or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party by whom the lease or sale is to be made."). Moreover, it appears that such lease agreements are necessarily contingent on Plaintiffs' applications being granted; *i.e.,* Plaintiffs cannot offer to lease space they do not have a cognizable legal interest in. Plaintiffs' bids have yet to be accepted or denied. Thus, even if the contracts had been

in writing, Commnet cannot be said to have yet breached them, preemptively or otherwise.

Finally, the SAC does not specify what legal obligations were encompassed by Commnet's promise to "support" Plaintiffs' applications. Plaintiffs do not allege that Commnet neglected to make agreed-upon payments toward the application process. Plaintiffs do not allege that Commnet encouraged or induced third parties to submit bids who would not have otherwise done so. Nor do Plaintiffs claim that Commnet's responsibilities were exclusive such that Commnet was bound to support only Plaintiffs' applications. In other words, the only manner in which Commnet is alleged to have failed to "support" Plaintiffs' applications is by also supporting competing applications. However, Plaintiffs do not sufficiently allege that Commnet was contractually prohibited from doing so. Thus, Plaintiffs ostensive anticipatory breach of contract claims fail and Counts V and VI must be dismissed.

## ORDER

It is hereby **ORDERED** that Defendant's Partial Motion to Dismiss (Dkt. #28) is **GRANTED IN PART** and **DENIED IN PART** as follows:

- **DENIED** as to Counts III and IV; and
- **GRANTED** as to Counts V and VI.

Dated: February 24, 2020
Denver, Colorado

N. Reid. Neureiter
United States Magistrate Judge